This is case No. 410-361. For the appellant, we have Mr. Picardo. Did I pronounce that correctly? Yes, you did. And for the appellee, Ms. Hackman. You may proceed. May it please the Court. This appeal primarily deals with a proper application of the various components of the Illinois Tort Immunity Act. At play in the lower court's decision, you have sections 2-106, 2-107, 2-109, and 2-204. Urbana contends that the Illinois Tort Immunity Act was improperly applied in this case. The issue is how to properly apply it in a case where you have one school district fabricating an employment verification form and then pass on to another school district what amounts to a pedophile teacher. And this case that the crux involves, does the tort immunity provisions that the Court ruled on apply to prevent liability for... Was it really a fabrication or just a creative omission? It was not a creative omission, Your Honor. We're talking about a very perfunctory form that the Illinois State Board of Education requires school districts to fill out when another school district is hiring a teacher. It's pretty straightforward. They have to note how many days the teacher taught, not just whether they were employed. So you can't be creative in the sense of, yeah, they were employed in the sense that they were on the payroll. This form is pretty specific. It asks for days taught. And in this case, the form that was filled out by Unit 5 indicated that this particular teacher, Mr. White, taught 180 days in that particular school year. So how do you apply Section 2-106, for instance, to that? The Court below said that 2-106 does provide immunity to this situation. Urbana has argued that 2-106 only applies to oral promises and oral misrepresentations. The language is pretty clear. That section of the Tort Immunity Act does not say anything about written communications. It's oral. If you compare Section 2-106 with 2-107, which applies to libel and slander and other provision of information, that section specifically states written or oral. So it's important when you're looking at Section 2-106 to apply it to only oral communications, whether it's an oral promise or an oral misrepresentation. Now the Court below tried to argue, or the Court below ruled, that Urbana's position was producing an absurd result if you compared Section 2-106 with Section 2-210. Now Section 2-210 is a section of the Tort Immunity Act which provides immunity for individuals. And with respect to Section 2-210, it says that it applies to somebody acting within their scope, an employee, to negligent misrepresentations, whether oral or written. I do not see how it would be absurd to read 2-106 to include only oral misrepresentations and promises, while 2-210 applies to both oral and written. They're two entirely different sections. One is designed to protect the public body. Section 2-210 is designed to protect the individual employee when they're acting within the scope and when they are not acting negligently. So it's very specific in that sense. So we believe that the Court erred in its application of 2-106. The Court, with respect to 2-107, gave very little explanation in its decision as to why that applied to provide immunity for Unit 5 in this case with respect to this fabrication of the document. 2-107 primarily applies to libel and slander cases. If you look at all the cases that have been cited in the decision below, all of those cases are about libel and slander. Now there is another provision of Section 2-107 which talks about the provision of information. And it doesn't say provision of misrepresented information. It simply says provision of information. Now if the Court below, and again it doesn't exactly state why 2-107 applies here, but the position of Urbana is that it cannot apply. Because if it were to apply that provision, provision of information generally to misrepresentations to any kind of communication, it would effectively render the Tort Immunity Act, the rest of the Tort Immunity Act, pretty moot and irrelevant. Why would you need any other section? Because if you think about how the Tort Immunity Act is supposed to operate, it's supposed to provide limited immunity with respect to a person's ability to sue a public body. It's not intended to cut off all liability of a public body. The way that the lower court has interpreted 2-107, at least as far as we can glean, is that it would cut off all liability if it's applied that broadly. Moving on to Section 2-109 and derivatively Section 2-204, the Court below ruled that Section 2-204 applied in this case. We argue that that was an error. Section 2-204 of the Tort Immunity Act provides immunity for an employee when they are alleged to be liable for somebody else's actions. Urbana is not arguing that anybody at Unit 5 is liable for somebody else's actions. That somebody that we're all talking around here is John White, the pedophile teacher. Urbana is not arguing that the individual at Unit 5 who completed the form, his name is John Pye, we're not arguing that John Pye is liable because John White was a pedophile. We are arguing, and it's clear in our complaint, that the harm that was caused to Urbana in this case was as the result of Assistant Superintendent Pye's fabrication of the employment verification document. That's where the harm occurred. It's a distinct act. What is the harm? What is the injury? The injury is the school district hired John White not knowing that he did not complete that year and also not knowing, and this is key, not knowing that Unit 5, when they completed that verification form, knew that John White had engaged in pedophile behavior while he was teaching at Unit 5, had made contact with students. Does Knox College help you? Does Knox College help? We do believe that Knox College helps. However, no case, interestingly in this matter, is on point. How does Knox College help? Knox College, I think, helps us in this case because there is language in Knox College which talks about the difference between discretionary and ministerial actions. And it is important to note that when we're talking about John Pye's actions, the Assistant Superintendent, it was a ministerial act. The court below never applied any analysis to determine if it was ministerial or discretionary. Now, the Tort Immunity Act, according to the Illinois Supreme Court, in such cases as Zimmerman and in the Chicago floods cases, has clearly held that for the public body to be held liable for an employee's actions, the action at issue has to be ministerial. In other words, immunity only applies to the public body if the action of the employee was discretionary. John Pye's completion of this form was not discretionary. It's a ministerial act. It's a form provided by the Illinois State Board of Education simply verifying dates of employment. Well, if it was ministerial, when he took the act of falsifying it, wasn't that discretionary? I would say no in the sense that discretionary involves those situations where a school district official or any public official has to exercise discretion with respect to such things as selling a school building. That's a common example, a common distinction that's been used. There's a case in which a good distinction was made in a school district setting in which a school district decided to sell a building. That act was considered to be discretionary by the superintendent. But when the school district fabricated an asbestos report, the completion of the asbestos report was considered to be ministerial because it was just a completion of a report. So that's the important distinction. A discretionary type decision is a decision that a school official is charged with making in the course of their duties, within the scope of their duties. To fill out an employment verification form would not call for the exercise of discretionary judgment within the scope of one's duties. If he did exercise discretion in that case, that employee is not acting within the scope of their duties. So with respect to... The woman was quite arrested for this particular problem? He was first arrested in 2007, early 2007. And that wouldn't have meant anything to the Urbana School District, would it? Not in the sense of the Tort Immunity Act, which is also a... I'm sorry, Your Honor. Not in the sense of the limitations under Section 8101 of the Tort Immunity Act, which is also an issue here. The date of the arrest certainly did not put Urbana on notice that Unit 5 was aware that White had engaged in pedophile activity while he was an employee at Unit 5 and when they completed that employment verification form. So to the extent that that date is important, it certainly isn't important from a limitations viewpoint. It certainly put Urbana on notice that it had in its midst a teacher that had been arrested and the district didn't take appropriate action. They just put that aside, put it in a box and forget it? The arrest, Your Honor, no. No, Urbana. Urbana had to act and did act.  There was no harm after... There was no harm to Urbana students following the arrest of Mr. White. I'm sorry. I'm not clear and I apologize because I don't have the complaint in front of me. What is the injury to Urbana? The injury to Urbana is they hired a pedophile teacher unknowingly. That's not an injury until something happens. Yes. Ultimately what happens is that this teacher, Mr. White, engages in pedophile behavior at Urbana, harms a significant number of students at Urbana, causing the district to address that in a number of ways. So there's money damages as far as how the district had to address that. Money damages in what sense? Money damages in the time and effort that was spent in looking at what the district had to do at that point in time, and then ultimately resolving the issue with the parents of these students. These were Urbana students. They diligently engaged as quickly as they could in discussions with those parents to try to resolve this issue, resolve what had happened in a way that... in the best way possible under the circumstances. And that is money. But isn't the injury also the lawsuits filed against you and the outcome of those lawsuits? There was only one lawsuit filed against Urbana, and that lawsuit was settled. And when did that happen? When did that happen? That happened in 2008 and into 2009. It was kind of an elongated process, Your Honor. I'm just trying to... Sure. I'm wrestling with what is the injury and the discovery rule. What were you on notice of when? And bottom line is, is that a question of fact for the jury? It is a question of fact for the jury, and that's one thing that we have argued, that under Section 8101 it should not have been applied as a matter of law in this case, because there are a number of points that Unit 5 argues should have put the district on notice. The court below in looking at the various events does say a discovery rule applies, and the court kind of ruminates on different points where maybe the district was on notice, but it never really says at which point. Urbana's position is that it was not put on notice and the statute did not begin to run until April of 2009. And what occurs in April of 2009 is a police report is provided to Urbana in the process of discovery. Urbana was copied on a police report in other litigation brought by the students against Unit 5. So litigation is continuing, which Urbana is not a party to, but it's copied on discovery which includes a police report. In that police report, again this is April 2009, in that police report there is specific information in there about how Urbana, or I'm sorry, how Unit 5 was in receipt of parent complaints and a teacher aid complaint that John White had engaged in pedophile behavior. This is while he was a teacher at Unit 5 and before they completed that employment verification form. What happened on August 13, 2008? August 13, 2008? August 13, 2008 I believe was the sentencing hearing. Wasn't that when Urbana Law Firm received a copy of the lawsuit? Yes, Your Honor. That is correct. There was a lawsuit, as I said, filed. Both Urbana and Unit 5 were sued by at least one parent of a student who was harmed. Then when the complaint against McLean County, when was that filed? Roughly at the same time. I thought it was September 18, 2009. Now there are a number of students, so there are different points in time when complaints were filed. The August 2008 date is probably a good date to look at as to when Urbana was in receipt of a lawsuit and Unit 5 was in receipt of a lawsuit. Now the lawsuits that were filed have a lot of allegations, including allegations against Urbana, that were simply not true. So simply reading the allegations of one of these complaints would not have put Urbana on notice. Wouldn't have put him on notice? They would not have put Urbana on notice that Unit 5 knew that Mr. White was a pedophile when they completed that verification form. There were allegations in there that he was a pedophile while he was at Unit 5, but there were no allegations in there that Unit 5 clearly knew about it. There were no allegations in there about the parents who had complained and about the teacher aide who had complained that John White was touching little girls. But wasn't it in April of 2008 that you actually knew that the information was false and that he had been passed on to you? We knew in April of 2008 only that the verification form was false. But again, we did not know at that point in time that Unit 5... How was it false? It was false because it misreported the fact that John White was actually dismissed in the middle of his last year at Unit 5. But that didn't serve as any other type of notice to Urbana? That certainly alarmed Urbana in the sense that, hey, we did not know. What did they do about it? What did they do about it? Wait until September of 2009 to file a complaint? The problem, Your Honor, is that up until April of 2009, shortly before September of 2009, Urbana did not know that when that form was fabricated, that Unit 5 knew about pedophile behavior. Now, there's another date that occurs in here, and that is in 2008 during the sentencing hearing. And at that sentencing hearing, you have the assistant superintendent from Unit 5, Mr. Pye again, testifying at the sentencing hearing. And he testifies that Unit 5 knew two things at the time that they let him go, that they let Mr. White go. One was that he had viewed pornography, adult pornography, on his computer at work. And the second thing was that he shared a picture, not a pornographic picture, but a picture of a fully clad woman with a student. Those were the two reasons or the two things that John Pye testified to as what Unit 5 knew when it let Mr. White go. In addition, Mr. Pye at that sentencing hearing said there was nothing else that we knew about. He foreclosed that there was any other information. This is in April of 2008. So, again, Urbana is not on notice that... occurred at Urbana as best as it could. As I said, as soon as it became known to Urbana that John White was arrested, it engaged in a course of due diligence. It investigated itself. It tried to immediately address the harm that had occurred with respect to these students. So a number of things were occurring. It's not as if Urbana was sitting around waiting for something to happen. But they didn't have any notice. They did not have notice. If anything was wrong. I wouldn't say that, Your Honor. What they did not have notice of is they did not have notice that when they fabricated, when Unit 5 fabricated that form, that they knew that John White was a pedophile. Urbana did not know that until April of 2009. When you say fabricated the form, what did they do in the form that was fabricated? The form was with respect to his last year of teaching. Every school district, when another school district hires one of their teachers, has to complete a form verifying how many days they taught in each year that they were employed by that particular district. So Unit 5, in completing this form for the last year that John White taught at Unit 5, said that he worked, he taught, actually taught 180 days, when in fact he was dismissed in the middle of the year. He did not teach 180 days. So they made it appear that he worked that full year. They removed what would have been a red flag. And they did it to facilitate the hire of John White by Urbana. And that's the harm that occurs and the damages that occur thereafter. But that is the harm that occurs in this case. Urbana is not seeking indemnification or contribution from Unit 5 with respect to what it had to deal with with respect to Mr. White's conduct. Rather, what Urbana is seeking is to address the harm caused by Assistant Superintendent Pai when he fabricated that form. Thank you, Counsel. You'll have some additional time on rebuttal. Thank you, Your Honors. Ms. Hackman. May it please the Court. In early 2007, John White was arrested for sexual misconduct with Urbana students. After that arrest, Urbana school students made claims and filed lawsuits against Urbana and its administrators. And in these complaints and claims, there were multiple acts of willful and wanton conduct by the Urbana administrators. They alleged that there was a failure to check references, that there was a failure to supervise, that there was a failure to respond to parental complaints that John White was engaging the female students in a taste test game that involved a banana and licking substances off that banana. There were six lawsuits filed. And because of those lawsuits and claims, Urbana settled each and every one of those claims and lawsuits with those Urbana students. And what they now seek, the injury that they seek, is to recover from Unit 5 the settlement expenses and the litigation costs that they incurred under complaints and claims of allegations of their own independent tortious conduct. So the issue, as I see it in this case, is whether or not Urbana can seek to shift its litigation costs and settlement expenses that it incurred because the Urbana students sued it for their own tortious and independent conduct. And I think that nothing is more telling in this case than the first page of Urbana's reply brief, where they state the laws and immunities on which the trial court based its decision may dictate the result reached by the lower court. We agree with the position that the trial court was right, but what we disagree with is plaintiff's position that this court should reverse on public policy grounds. This court, as well as many other courts in the Illinois Supreme Court, has said that the courts cannot read exceptions, limitations, or conditions into statutory immunities that provide clear and unambiguous language. Well, assuming the law is as you say it is, when did they know? When should they have discovered the injury? Which day? Urbana. In terms of the statute of limitations? I think there are several things that put them on inquiry notice, and I would suggest that the plaintiff here and below is arguing that it's an actual knowledge requirement. They contend, or they state in their brief, that the statute of limitations was triggered only after it quote, learned hard facts demonstrating that Unit 5 had perpetrated a fraud, end quote. But it's clear under Illinois law that we're talking about an inquiry notice standard, not an actual knowledge standard. When did they know? Was Mr. White arrested for acts that he committed to Urbana students or McLean students? Both. Was he arrested at the same time? I think that the arrest with respect to the McLean County students came a little bit later, but not much later. I think it all occurred in 2007. And there are a number of facts that should have put Urbana on inquiry notice. And maybe they didn't know all these facts at the same time, but they clearly knew all of them more than one year before this lawsuit was filed on September 8, 2009. And what were those facts? First of all, they knew that White had pled guilty to criminal conduct in Champaign and McLean County more than one year before this lawsuit was filed. By April 15, 2008, they knew that White had been removed from the classroom, from Unit 5's classroom, prior to the end of the school year. Now, in the court below and even here... When did they know that? Pardon me? When did they know that? By April 15, 2008. And in the court below... And when did they learn that on April 15, 2008? Pardon me? When did they learn that? Prior to April 15, 2008. I don't know the exact date. We serve requests to admit, and they admitted that prior to April 15, 2008, they knew that. So that's what put them on notice? I'm saying a combination of things that they knew. In the trial court below and even here, they said that had they known, had they gotten that verification form and learned that he had been removed from the classroom before the end of the year, that would have been a red flag because no teacher ever gets removed from the classroom before the end of the school year unless something really egregious happened. And they argued in the court below that had they known that information in 2005, they would have investigated further because it so rarely ever happens. So if it was such a red flag and would have been a red flag in 2005, it should have been a red flag when they got that same piece of information on April 15, 2008. Why isn't this a question of fact for the jury? Because as a matter of law, when you consider everything together, they not only had knowledge that he was removed before the end of the school year, you had the conviction. They knew of John Pye's testimony at the sentencing hearing, and in that sentencing hearing, John Pye testified about the adult porn access. He testified that one parent had complained multiple times about John Pye's actions with respect to her daughter. It wasn't just, and they knew that he was removed, according to John Pye, from the classroom before the year end because of what they thought was a pattern of inappropriate behavior. And by August 13, 2008, they had the Urbana-Jane Doe II complaint. And despite plaintiff's counsel's representations, that complaint had allegations that Unit 5 had actual knowledge of parental complaints that John White had been engaging in sexually inappropriate conduct, sexual harassment, grooming, and abuse.  And that complaint also alleged that Unit 5 had concealed that information when, quote, this is their term, not mine, when John White was passed to Urbana. So they had that complaint by August 13, 2008. Why shouldn't the jury have to make the determination, okay, we know they knew this information, but this school district is also in the middle of turmoil, where they've been sued by X number of people over horrible allegations, and they're trying to defend themselves, get rid of the teacher. It just seems to me that the facts surrounding what was going on at this time that we don't have are important. And that we shouldn't be deciding. And respectfully, I think that the facts that they had were sufficient to put them on inquiry notice. They were sued in the same lawsuits that lawsuits were brought against both Urbana and Unit 5. At that time, they would have been investigating, well, should we be bringing action against Unit 5? That would be part of their due diligence. What is your best case on inquiry notice where fraud is involved? I'm not sure if I understand your question completely. Do you have a case? Oh, my best case. I can't think of anything that's come to mind. It just seems unusual to me that someone who's been harmed has a duty to go out and ferret out fraud. Well, they have a duty to investigate. They've got all of these facts before them. And it's not that they have to have actual knowledge. We're not suggesting that they... They needed to inquire once they had knowledge of all these facts. And I would also suggest to the court under Section 8101, we're talking as if it's clear that the discovery rule applied. Under 8101 of the Tort Immunity Act, there's two different paragraphs. Paragraph A applies to non-patient care cases, which is what we have here. Paragraph B applies only to patient care cases. And in that paragraph B, there's expressed language providing for a discovery rule. In this case, we're not in a patient care case. Paragraph A doesn't contain a discovery rule. And under the principles of statutory construction, when one paragraph includes language that's not included in another paragraph, it's presumed that that language in the second paragraph applies only to the second paragraph. So we don't believe a discovery rule even applies in this case. And if that's the case, the alleged fraud or fraudulent concealment occurred in 2005. And in this case, it's clearly part of the statute of limitations. And even if the discovery rule applies, again, they had enough pieces of information, a lot of pieces of information, pieces that they're claiming would have been a red flag in 2005 had they known it, but they're saying that that's not sufficient to put them on inquiry notice of a possibility of a claim. Aside from the statute of limitations, unless the court has more questions about the statute of limitations, the tort immunities clearly apply here. Section 2106 provides immunity for misrepresentations. Now, plaintiffs want to claim that that applies only to oral misrepresentations. But Illinois courts, in construing the term or, view that as a disjunctive, terms before and after, or are to be viewed separately. And in fact, cases have applied 2106 to written misrepresentations. Moreover, there is an inconsistency, an absurd result, if 2-210 is interpreted differently than 2106. Because you'll have a public employee being immune from a written misrepresentation. And by virtue of 2109, the local public entity should also be immune. But under 2106, you would have an inconsistent result in that, according to plaintiffs, you'd have liability for a written misrepresentation. So in order to interpret those provisions consistently, they must both be interpreted to apply to written misrepresentations. I know that the plaintiff has filed a motion for leave to cite supplemental authority. I would only suggest that supplemental authority is a federal decision, it's not binding, it's not precedential. In addition, it doesn't apply to the facts of this case. To this case, that case did not even allege a misrepresentation at all. Moreover... What was the motion that was filed? I don't think it got to my phone. There was a motion filed Friday? It was Thursday afternoon, Your Honor. So we filed a motion that in the case that was decided in early January, which we felt was pertinent to this matter. It was a motion for leave to cite additional authority. That's the way to file it, I understand. And you haven't received any notice of it having been granted or denied? And if you don't mean to address it, I won't. Not having the motion in front of me is difficult to tell you. We'll take it under advisement. Although I might want to point out that if you say federal law isn't really applicable to a state court claim, probably not a really good argument to make in front of Judge Myerscough, who's about to become our new federal judge. My point is it's not binding, not precedential. That's my point. I understand. Is it on point? I don't believe so. It's a case involving two children who their mother had some protective orders entered against an ex-husband. The ex-husband, during a custodial visit, took the children and then murdered them and shot himself. That's a brief summary. And there's no separate independent count for misrepresentation in that claim. The defendants raised 2106. The court said the existing case law interpreting and applying this section is entirely in the realm of zoning and permits where misrepresentations cause property loss or monetary loss. And what the court seems to suggest is that injury means only, under 2106, property loss or monetary loss. But under the Tort Immunity Act, injury is broadly defined. So to the extent that court said, well, for 2106, it only applies to this subset of injury, I don't think that that was a proper interpretation of 2106. What court is that? It was the Central District of Illinois. And I think it goes against Illinois courts that say that a court cannot read exceptions, conditions, or limitations into the Tort Immunity Act. And to the extent they're saying that 2106 only applies to certain sorts of injuries, I don't think that's a correct application of the law. And there's also no language in 2106 that says it's limited to zoning cases. So for that reason, with respect to that supplemental law, I don't agree with it. I think that 2106 is not limited, as suggested by that case. With respect to immunity under 2204, that immunity provision provides that except as otherwise provided by statute, public employees, as such, in acting within the scope of their employment, are not liable for injury caused by an act or omission of another person. That section clearly applies when there's an allegation that a public employee is acting within the scope of their employment. Presumably, they're arguing that John Pye was acting within the scope of his employment, otherwise we wouldn't be here today, because there wouldn't be responding to superior liability. They're also alleging that injury was caused by an act or omission of another person. They allege, in particular, that the Urbana does were injured by White's acts, and that Urbana was damaged when it incurred settlement and litigation expenses because of White's conduct, and because the Urbana administrators allegedly engaged in willful and blunt conduct under... The McLean administrators. No. No. Urbana administrators. They incurred litigation and settlement expenses because of the alleged acts of their own administrators. So they're trying to say that John Pye, and, you know, Pye, should be liable because the Urbana administrators failed to take action. All right. Makes sense? The plaintiff's position is that 2204 should be limited to allegations of respondent superior, but under the clear language of the statute, it says acts or injury, excuse me, liable for injury caused by acts or omissions of another person. Had the legislature intended to limit that to respondent superior only, they could have said by another public employee. And, in fact, in other provisions of the TOR Community Act, they did use that language. And the fact that they used another person in this statutory provision necessarily means that they intended that statutory immunity to extend beyond respondent superior. And, in fact, there are cases available that hold that 2204 goes beyond respondent superior, and I've cited those in the brief. 2204 also applies when another person is the immediate cause of injury. Throughout the TOR Community Act, the legislators have used the term proximate cause in other provisions. They have not used that proximate cause language here. And I would direct the court's attention, and I did so in my brief, to section 6108 of the TOR Community Act. And in that provision, it says neither a local public entity nor a public employee is liable for an injury caused by or to an escaping or escaped mental patient. That is very similar to the language we have here. And I believe that under both provisions, the intent of that language is to immunize a public employee when another person is the immediate cause of that injury. Finally, just one note, I know my time is running out. We believe that under Illinois case law, the plaintiffs, because they settled under allegations of complaints alleging they were independently tortious, they cannot seek to shift their settlement and litigation expenses to another party, here at Unit 5. And they argued in their reply brief, I just want to point out, they suggest that we argued here that Unit 5 and Urbana were joint tort cases. We've never suggested that anywhere in the briefs. What we argued below, they alleged that they were not seeking indemnity because we were not joint tort cases. And what our argument is, it doesn't matter under Illinois law. Simply because the parties aren't joint tort cases does not mean the courts are not going to apply implied principles of indemnity. And under those principles, where a party settles under a complaint where it is alleged to be independently tortious, it cannot seek to recover its own settlement and litigation expenses. I know my time has run out, and I thank you, unless there's further questions. Thank you. Tell me again, when did Urbana first learn about Mr. White's conduct and when did they first learn about it? Urbana first learned in April 2009 that Unit 5 was aware that John White had engaged in pedophile behavior, contact with little girls who were students in his class. I think Justice McCullough's question was when did Urbana learn about Mr. White's conduct, not what District 5 did. I'm sorry, his conduct in Urbana? Or anywhere. The first time that Urbana learned of Mr. White's pedophile conduct was when he was arrested. And at that time, he was a teacher in Urbana. And he was arrested for conduct relative to students in Urbana and then subsequently conduct relative to students in Unit 5. What was the date? It was early 2007. So we're talking January, February. The arrests, there were multiple victims, so the arrests were not necessarily all at the same time. But we're talking the early part of 2007. And when did Urbana determine that the form filled out by Unit 5 concerning him working the full school year was not correct? That would have been at the time that the lawsuits were filed, which would have been beginning in the late summer of 2008. Wouldn't it have been in April of 2008? There may have been knowledge in April of 2008. And that's considerably more than one year prior to the complaint being filed? April 2008 is more than one year, Your Honor, from September 2009. What's the statute of limitations? It is a one-year statute of limitations with a discovery rule. The court below did find that there was a discovery rule. It says that. So I don't think there's any dispute about the discovery rule. But the position of Urbana, Your Honor, is as simple. You have in this situation a school district who completes this employment verification form, which says that he taught during that time period. Let's say it's April 2008 that they first learn that that form… Well, they did learn. They did learn that it was false. April 2008 they've learned that it's false. They want to go back and say, well, originally when you did this, and that should still apply, you didn't tell the truth. If I may, Your Honor, the problem at that point in time with asking that kind of question or filing a lawsuit is Urbana still didn't know at that point that Unit 5 knew he was a pedophile. Unit 5 was saying we let him go because he looked at adult pornography on a school district computer and we let him go because he gave a picture of a fully clad woman to a student. Those were the reasons that Urbana thought at that time he was let go in the middle of the year. We didn't know that Unit 5 knew about the pedophilia. Here's kind of a problem with that argument. In this environment, in the world we live in today, which, for good or ill, has a heightened sensibility to persons with deviant sexual proclivities. The first thing that pops into anybody's mind, if there's something, there could be all sorts of things. He had a picture of an adult woman looking at adult pornography, but how big of a stretch is that to kids? Any normal parent would think that. Any normal school administrator would think that or suspect that. Okay. So if you knew in April, you knew at least enough to ask the question in April, or should have known enough to ask the question in April. Why didn't you? The questions that were being asked at that time were straightforward in the sense that it was not surprising to one school district that another school district would let somebody go if they were looking at adult porn. That is not an unusual scenario. So it wouldn't necessarily trigger in one school district's mind, in looking at whether they should sue another school district, that that may have been improper. Because remember what Urbana knew at that time. They knew that he was let go in the middle of the year, that the form was false, and they knew what John Pye had testified to, and that was it was because of looking at adult porn. Would a parent say, okay, adult porn has got to be kid porn? A parent probably should say that in this day and age. I completely agree. We're talking about two school districts who don't generally sue each other. It's pretty unusual for one district to sue another school district. And particularly school districts have to deal with difficult teachers under tenure laws, which really make it difficult at times as to how to deal with a scenario like this. And it's not unusual, certainly a red flag, but not unusual that a teacher would get let go in the middle of the year for looking at adult porn on a school district computer. Sufficient grounds to let that teacher go. So it wasn't unusual to Urbana that that occurred. And remember, there's a lot of plaintiffs out there at this time who are throwing a lot of different allegations about what Urbana knew, that Urbana never knew, and what Unit 5 knew. So as far as what Urbana could discern, at that point in time, it's not clear. And the position of Urbana is it did not become clear until April of 2009 that Unit 5 was aware of the pedophile behavior. It's a fact question. I think it should go to a jury. It shouldn't be decided as a matter of law. Thank you, Counsel. Time has expired. Thank you. We'll take this matter under advisory.